John PASLEY, Administrator d/b/n of the Estate of Richard I. Thompson, Deceased, Plaintiff-Respondent,

v.

Mary R. Pratt NEWTON, Defendant-Appellant.

No. 25283.

Kansas City Court of Appeals, Missouri.

April 6, 1970.

Rehearing Denied June 1, 1970.

Charles C. Shafer, Jr., Kansas City, for defendant-appellant.

Arthur R. Kincaid, Robert E. Coleberd, Liberty, for plaintiff-respondent.

CROSS, Judge.

This action, in two counts, was originally instituted by Richard I. Thompson, now deceased, who in his lifetime was a licensed real estate broker. In count one of his petition he sought to recover of defendant, Mary R. Pratt, (now Mary R. Pratt Newton), a real estate commission for services rendered defendant in her purchase of a tract of land from one Mrs. M. Pearl Davidson. In count two he undertook to recover $2,000.00 from defendant for money he claimed to have loaned her to complete the transaction.

Richard I. Thompson died on March 5, 1968, during pendency of the action, and his wife, Ruby P. Thompson, who had been appointed administratrix of his estate, was substituted as party plaintiff in his stead. Ruby P. Thompson died November 3, 1968. Thereafter, and prior to trial, John Pasley was appointed administrator, de bonis non, of Richard I. Thompson's estate and substituted as party plaintiff in the action.

The case was tried on February 17, 1969 and submitted to a jury which returned a verdict upon count one for plaintiff and against defendant in the sum of $5,500.00. In their verdict on count two they found the issues in favor of defendant. Defendant has appealed from the judgment. Plaintiff has not.

The essential allegations of count one are that plaintiff (Mr. Thompson) was a real estate broker, duly licensed in Missouri with offices in the City of Liberty; that prior to the 19th day of July, 1967, he was authorized by defendant to act as her agent in the proposed purchase of certain real estate located in Clay County, then owned by one M. Pearl Davidson; that on July 19th, 1967, so acting as defendant's agent, plaintiff "was able to procure from the said M. Pearl Davidson a contract in writing to sell said real estate on terms acceptable to defendant and the said defendant did execute said written agreement on said date"; that the consideration for the sale agreed upon was $55,000.00; and, that

plaintiff is entitled to receive for his services as such agent a commission of 10%, amounting to $5,500.00. No reference to the contents of count two of the petition is necessary for the purposes of this appeal.

■ The allegations of count one, the submission of the issues raised, and the jury's verdict are amply supported by the evidence.

Mrs. Margaret Weagley, daughter of the previously mentioned M. Pearl Davidson was called as a plaintiff's witness. She testified that on July 19, 1967, her mother went to the office of an attorney in Liberty, to meet and confer with Mr. Thompson, who had previously called her and requested that she do so. Mrs. Weagley accompanied her mother and was present during the meeting. She identified plaintiff's Exhibit 1 as a copy of a contract for the purchase of land her mother signed in her presence on the occasion above noted, pursuant to an agreement between her mother and Mrs. Pratt that Mr. Thompson had arranged. There were three copies of the instrument and "all copies were given to Mr. Thompson for Mrs. Pratt to sign". Two days later another meeting was held at which Mr. and Mrs. Thompson, Mrs. Pratt and Mrs. Weagley and her husband were present. By that time Mrs. Pratt had signed the contract. In addition to the signatures of Mrs. Davidson and Mrs. Pratt, the instrument also bore the signature of "R. I. Thompson, Agent for Second Party." All three signatories received copies of the contract and Mrs. Davidson received $7,500.00 as down payment on the transaction.

Exhibit No. 1 was offered and received in evidence and read to the jury. At the time of the offer the trial court specifically inquired of defendant's counsel whether he had "any objection based upon the fact that's not the contract your client signed". Counsel answered, "No". Pertinent portions of the contract are here quoted:

"THIS AGREEMENT, Made this 19th day of July, 1967, by and between M. Pearl Davidson, first party, and Mary R. Pratt, second party, all of Clay County, Missouri, WITNESSETH:

"That for and in consideration of the aggregate sum of $55,000.00 to be paid by second party to first party at the times and in the manner hereinafter set forth, first party sells and agrees to convey to second party all of the following described real estate in Liberty, Clay County, Missouri, to-wit: (description of the subject real estate)

\* \* \* \* \* \*

"Of said purchase price the sum of $7,500.00 is now here paid, receipt whereof is hereby acknowledged. \* \* \*

\* \* \* \* \* \*

*It is further understood and agreed Richard I. Thompson, duly licensed real estate broker in Liberty, Missouri, is the agent of second party and that no sales commission of any kind is due from first party."*

(Emphasis supplied.)

\* \* \* \* \* \*

In witness whereof, the parties have set their hands to three copies of this agreement, each an original, one for each of the parties hereto and one for said Richard I. Thompson, all on the day and year first above written.

"Signed, M. Pearl Davidson, First Party; Mary R. Pratt, Second Party. Receipt of the foregoing contract acknowledged. Signed, R. I. Thompson, Agent for Second Party."

Both Mrs. Davidson and Mr. Thompson died before the contract was fully executed.

Official public records of Clay County show that the contract of purchase was consummated during administration of the estate of Mrs. Davidson by Mrs. Weagley as administratrix. On August 15, 1968, a petition bearing the notarized signature of Mary R. Pratt was filed in the Probate Court of Clay County. Representing therein that she had entered into written

agreement with Mrs. Davidson on July 19, 1967, whereby the latter became obligated to sell and convey to her certain real estate, she prayed the court's order requiring the administratrix to comply with the terms of the contract and, upon receipt of additional consideration specified in the contract, to convey the property to petitioner by warranty deed. The probate court duly granted the petition and thereafter the administratrix, pursuant to appropriate orders of the court, conveyed the property to petitioner in fee by her "Administratrix's Deed" duly recorded.

Robert Hufft, a licensed real estate broker of Liberty, Missouri, doing business as such in Clay County, was also called as a witness on behalf of plaintiff. He testified that he was acquainted with Richard I. Thompson in his lifetime and knew that his business was "real estate". He identified plaintiff's Exhibit 7 as Mr. Thompson's official real estate broker's license for the years 1967–68, issued by the Missouri Real Estate Commission and certified by Marvin W. Camp, its secretary. The witness testified that it was the customary practice in his profession as a real estate broker to charge commissions, and that the customary commission rates had been established by the members of the Real Estate Board at six per cent on improved areas and ten per cent on unimproved areas. Mr. Hufft stated that in his opinion a reasonable and proper real estate commission for services rendered by Richard I. Thompson as the representative of Mary R. Pratt in securing the execution of the real estate contract in question would be ten per cent of the purchase price, amounting to $5,500.00.

Defendant took the stand on her own behalf and undertook to testify as to transactions with Mr. Thompson in person relating to the matters in issue. Offers of such testimony were refused by the court as being in violation of V.A.M.S. § 491.010, the so-called "Dead Man's Statute". Defendant on cross-examination admitted that she paid an "additional $7,500.00 plus interest" to the administratrix of Mrs. Davidson's estate, and signed a promissory note for $40,000.00 (also payable to the administratrix) together with a deed of trust, and that she "now" (as of trial date) owned and was in possession of the real estate involved. Following the cross-examination just noted, defendant's counsel argued unsuccessfully to the court that objection to her incompetency as a witness had thereby been waived and renewed offers of her testimony relating to transactions in issue with Mr. Thompson in his lifetime. The offers were again rejected.

Additional evidence was adduced by both parties pertinent only to the issues under count two. Since those matters of controversy have been laid at rest by final judgment from which no appeal has been taken, we make no note of any evidence pertaining thereto.

Plaintiff's verdict directing instruction told the jury that their verdict must be for plaintiff on count one if they believed that Richard I. Thompson was a duly licensed real estate broker and that at defendant's instance he procured the sale of the real estate described in evidence. The measure of damage instruction given at plaintiff's request told the jury that if they found for plaintiff on count one their verdict in plaintiff's favor should be in such an amount as they found and believed from the evidence to be the reasonable value of the services of Richard I. Thompson as agent for defendant.

■ Defendant briefs seven points. Her point numbered V charges the trial court with error "in refusing to sustain defendant's motion for a directed verdict because of the failure of the plaintiff to make a submissible case." Referring to the record, we find that the motion for a directed verdict was made orally at the conclusion of plaintiff's evidence and was not renewed at the close of all the evidence. In her motion for new trial, with reference to the immediate question, defendant complains only of the trial court's refusal to

direct a verdict in her favor *at the close of plaintiff's evidence.* Consequently point V has not been preserved and does not present the question of the submissibility of plaintiff's case for our review. "It is the settled rule that a defendant who wishes to urge that the trial court erred in submitting plaintiff's claim to the jury must have filed a motion for directed verdict at the close of all the evidence. By his failure to have filed such a motion, he has, in effect, requested the court to submit the case to the jury, and he may not thereafter complain of that which he voluntarily requested the court to do. (citing cases)." Millar v. Berg, Mo.Sup., 316 S.W.2d 499. Also see Tush v. Owens et al., Mo.App., 435 S.W.2d 23, Ukman v. Hoover Motor Express Co., Mo.Sup., 269 S.W.2d 35 and Lindsay v. McLaughlin, Mo.App., 311 S. W.2d 148.

The remaining six points set out in defendant's brief are contentions that the trial court erred: in refusing her offer to testify as to her dealings with Mr. Thompson in his lifetime relative to the matters in issue on the ground she was disqualified by V.A.M.S. Section 491.010; in refusing the same offer following cross-examination of defendant by plaintiff's counsel on matters occurring since Mr. Thompson's death; in permitting Mrs. Weagley to testify, over defendant's objection that she was disqualified by V.A.M.S. Section 491.-010; in admitting plaintiff's Exhibit 1 in evidence; in giving plaintiff's verdict-directing instruction; and in giving plaintiff's measure of damage instruction.

█ █ Again, whether or not we accept these points for the purpose of review depends upon whether they have been preserved in accordance with rules which provide for and limit our review. Our authority to review contentions of error is limited, in particular, by two rules. Civil Rule 79.03, V.A.M.R., requires that allegations of error (with certain exceptions not applicable herein) *must be presented to the trial court in a motion for a new trial.* Civil Rule 83.13(a) declares that no allegations of error shall be considered on appeal, except such as have been presented to the trial court. General allegations in the motion will suffice if based upon specific objection or requests made during the trial. Otherwise specific allegations must be made. In any event, the allegations must be sufficiently definite to direct the court's attention to the particular acts or rulings asserted to be erroneous. The rationale underlying this requirement is stated in Schneider v. Southwestern Bell Telephone Co., Mo.App., 413 S.W.2d 16, as follows:

"The dual purpose of an after-trial motion is stated tersely in Fruit Supply Co. v. Chicago, B. & Q. Ry. Co., Mo. App., 119 S.W.2d 1010(4): 'The office of a motion for a new trial is to gather together the rulings complained of as erroneous, and solemnly and formally present them, one by one, in black and white to the judge in order that he have a last chance to correct his own errors without the delay, or expense, or other hardships of an appeal. This much is required. Less does not preserve the rulings for review.' This is a well established principle of our law of trial and appellate procedure. Lloyd v. Garren, Mo., 366 S.W.2d 341(6, 7).

"This principle requires that the grounds of an after-trial motion be specific, not general; and deficiencies in an after-trial motion cannot be supplied by appellant's brief. Civil Rules 79.03 and 83.13(a) so declare. And see Ayres v. Keith, Mo., 355 S.W.2d 914(1, 2), and Layson v. Jackson County, 365 Mo. 905, 290 S.W.2d 109(5). For cases holding that assignments similar to Bell's preserve nothing for review, see 2A Mo.Digest, Appeal & Error ☞302."

The grounds of alleged error set out in defendant's motion are here quoted in full:

"1. Because the Court erred in admitting incompetent, irrelevant and immate-

rial evidence offered by the plaintiff and over objection of the defendant;

2. Because the Court erred in excluding competent, relevant and material evidence offered by the defendant;

3. Because the court erred in refusing defendant's motion for a directed verdict for the defendant at the close of plaintiff's evidence;

4. Because the verdict is against the evidence;

5. Because the verdict is against the greater· weight of the credible evidence in the case;

6. Because the verdict is against the law under the evidence;

7. Because the verdict is excessive;

8. Because the verdict is so excessive as to show bias and prejudice on the part of the jury;

9. Because the verdict is a quotient verdict;"

It is clearly manifest that the motion for new trial is not only void of any *specific* allegation of error sought to be presented by any of the six points in question, but that it is also destitute of any *general* allegation sufficient to identify the particular rulings of the court that were the subject of defendant's complaint. The trial court has not been given his "last chance to correct his own errors". Since nothing has been preserved for review as respects the points under discussion, we decline to consider them.

The judgment is affirmed.

SHANGLER, P. J., HOWARD, J., and TIMOTHY O'LEARY, Special Judge, concur.