Margaret SKELTON, Plaintiff,

v.

GENERAL CANDY COMPANY, Defendant.

No. 36912.

Missouri Court of Appeals, St. Louis District, Division Three.

June 15, 1976.

Motion for Rehearing or Transfer Denied July 9, 1976.

Application to Transfer Denied Sept. 13, 1976.

Armstrong, Teasdale, Kramer & Vaughan, John J. Cole, Larry B. Luber, St. Louis, for defendant.

James F. Koester, David G. Dempsey, Shifrin, Treiman, Bamburg & Dempsey, St. Louis, for plaintiff.

GUNN, Judge.

Plaintiff-respondent fell on defendant-appellant's parking lot. The jury awarded plaintiff $15,000 for injuries sustained as a result of the fall, and defendant has appealed. On appeal, defendant suggests four points of alleged trial error: 1) that the plaintiff's verdict directing instruction embraced two theories of recovery, neither of which was supported by the evidence; 2)

that plaintiff was permitted to amend her petition at the close of plaintiff's evidence to advance a new theory of liability; 3) that testimony of plaintiff's expert witness concerning the condition of defendant's parking lot was improper; 4) that plaintiff was permitted to present evidence of specific damages not pleaded. We find no reversible error and affirm the judgment.

Plaintiff was 78 years old at the time of her injury. On the date of her accident, plaintiff had been driven to defendant's place of business in St. Louis by her granddaughter to pick up some supplies for her daughter's sandwich shop. Plaintiff had frequently performed this errand at defendant's store and was familiar with the parking lot. After plaintiff had placed the order for supplies she returned to her granddaughter's automobile on defendant's parking lot, and as she was opening the automobile door, she stepped in a hole and fell on her hip causing a fracture necessitating surgery and the insertion of a prosthesis.

■ Defendant does not dispute the injury to plaintiff or that she did fall on its parking lot. Defendant concentrates its attack on plaintiff's testimony as to the precise location of plaintiff's fall and contends that there was insufficient evidence to establish that plaintiff fell in a hole on an incline in defendant's parking lot. Plaintiff testified that she stepped in a hole in defendant's parking lot and fell; that the hole was on an incline. Defendant argues that there was but a single incline on the parking lot and that according to the photographic exhibits, no hole appears on that incline. But defendant overlooks the fact that the evidence firmly establishes that there were two inclines on the parking lot— albeit one was substantially smaller than the other—and the smallest incline contained a hole in the asphalt. While plaintiff's testimony appears at times to be confused and confusing, giving effect to the judicial aphorism that the evidence is to be viewed in the light most favorable to the

verdict,[1] a jury could find that the plaintiff could have fallen by reason of a hole in the asphalt in the smaller incline of the parking lot. The defendant concedes that there was a hole on the parking lot but argues that it was a substantial distance from the larger incline and suggests that the evidence clearly places the plaintiff on the large incline at the time of her fall. Thus, defendant concludes that the plaintiff could not have fallen in a hole. But there is evidence from the plaintiff and her granddaughter from which a jury could find that plaintiff fell in a hole on the small incline.

■ Having thus determined that there is sufficient evidence to establish that plaintiff fell in a hole in an incline (the small incline), we tackle defendant's first point of alleged error: that plaintiff's verdict directing instruction submitted dual theories of recovery in the conjunctive. Plaintiff's verdict director reads:

"Your verdict must be for the plaintiff if you believe:

First, that defendant's parking lot had a hole in the asphalt and was on an incline and as a result the parking lot was not reasonably safe for customers, and

Second, plaintiff did not know of and by using ordinary care could not have known of this condition, and

Third, defendant knew or by using ordinary care could have known of this condition, and

Fourth, defendant failed to use ordinary care to repair it, and

Fifth, as a direct result of such failure, plaintiff was injured."

Defendant complains that paragraph First of the instruction submits dual theories of recovery based on alleged negligence of a hole in the driveway and negligence due to maintaining an incline.[2] Of course, the practice of submitting dual theories of recovery in the conjunctive is prohibited by MAI 1.02. But defendant's dual theory issue has not been preserved for appellate

1. *Zipp v. Gasen's Drug Stores, Inc.*, 449 S.W.2d 612 (Mo.1970).

2. Presumably defendant would be referring to the steep incline without the hole in it as opposed to the smaller incline with the hole.

**610**

review, as it was not presented to the trial court in the motion for new trial.

■ The Supreme Court rules clearly set forth the procedure for preserving error for appellate review. When a specific objection to an instruction is made during the trial, it is sufficient to make a general statement in the motion for new trial of any allegations of error based thereon, but if no specific objection is made at trial, the motion for new trial must contain the specific objection. Rules 70.02; 78.07.

> "The intent is that both the trial court and the appellate court may know specifically what the objections are, and that the appellate court may know that they have been presented to the trial court." *Ayres v. Keith,* 355 S.W.2d 914, 917 (Mo. 1962).

The allegations of error made to the trial court must be "sufficiently definite to direct the court's attention to the particular acts or rulings asserted to be erroneous." *Pasley v. Newton,* 455 S.W.2d 43, 47 (Mo. App.1970). The purpose of these rules is to give the trial judge one last opportunity to correct his errors without the delay, expense or hardships of an appeal. *Safe-Buy Real Estate Agency v. Hemphill,* 498 S.W.2d 599 (Mo.App.1973); *Pasley v. Newton,* supra.

The defense did make what could be construed as a specific objection to plaintiff's verdict director when it was first presented:

> Defendant's counsel: "Well, I want to state on the record that I object to the new theory that plaintiff has injected in here, which would permit the jury to find against the defendant if they find that

there was a hole in the parking lot, even in the driveway where the plaintiff had positioned it. And, also, that the parking lot was on an incline. I think that his claim that it is a basis of negligence that the parking lot was on an incline is a separate, distinct and new theory of negligence which we are not prepared for, and I claim surprise; and I would ask the Court to eliminate that theory from the verdict directing instruction.

> "The Court: Well, it is the Court's understanding of that instruction, which is No. 3, that there was a hole in the asphalt and that it was on an incline and that the hole being in a point where the parking lot was inclined was merely an addition that made it not reasonably safe for customers. I don't construe the instruction as finding that the mere fact that the parking lot is on an incline is a dangerous condition."

We note that the foregoing objection does not precisely designate that the instruction encompasses dual theories—the objection seems to go to the injection of a "new" theory. In any event, even if we were to accept the objection as being specifically directed at dual theories submission, the defendant's motion for new trial is devoid of objection or reference, either specific or general, that the instruction contained dual theories.[3] Hence, we find that the defendant cannot argue the dual theory issue on appeal, for the trial judge was not given opportunity to consider that issue at the time of the motion for new trial.

■ Defendant also argues that the plaintiff was improperly permitted to

---

3. Defendant argues on appeal that the following portion of its motion for new trial raised the "dual theory" argument:

> "Paragraph 'First' improperly combined the existence of a hole (in the driveway) with an incline in the parking lot not related to or connected with the hole as a joint, concurring and contributing cause of her fall when there was no pleading or evidence that such a combination of circumstances or conditions caused her fall; *and therefore said instruction was broader tha [sic], and beyond the scope of the pleadings and the evidence."* [Emphasis added].

This objection seemingly admits that the two elements (hole and incline) were joined in the instruction as a single cause of the fall. The objection was that there is no evidence to support the combining of these two elements. The trial court, we believe properly, disagreed. Defendant's memorandum of law submitted with the motion for new trial, supports our view that this objection went to another point. There is no mention of the "dual theory" issue or cases on the point in the memorandum.

amend her petition at the close of plaintiff's evidence to allege negligence by defendant by reason of a hole on an incline in the asphalt on the parking lot. Plaintiff's initial petition alleged that plaintiff's fall occurred when she stepped on "cracked and uneven pavement" which defendant had allowed to develop in its parking lot. During the cross-examination of plaintiff, defendant's counsel sought to elicit from her that the cause of plaintiff's fall was a steep incline on the parking lot rather than a hole in the parking lot. During the cross-examination plaintiff identified the hole in which she fell as being on an incline.[4] Thereafter plaintiff sought and was granted leave to amend her petition to charge that the defendant had negligently permitted a hole to form in its parking lot, failed to repair the hole and that the hole was located on an incline. We believe that the amendment conformed with the evidence presented. Inasmuch as it was defendant's examination of plaintiff that established that plaintiff had fallen in a hole on an incline, the pleading, without formal amendment, should have been treated as if amended to conform to the evidence and issues raised by the implied consent of the parties. Section 509.500 RSMo 1969; Rule 55.33(b); *Middleman v. Complete Auto Transit, Inc.,* 486 S.W.2d 456 (Mo. banc 1972). Consequently, the trial court did not err in allowing the formal amendment. Furthermore, the decision whether to grant leave to amend pleadings is within the sound discretion of the trial court. *Boling v. State Farm Mutual Automobile Ins. Co.,* 466 S.W.2d 696 (Mo.1971); *S. v. W.,* 514 S.W.2d 848 (Mo.App.1974), and since we believe that the amendment conforms with the evidence, we find no abuse of the trial court's discretion in permitting the amendment to plaintiff's petition.

■ Defendant also insists that the amendment enlarged the issues, and the exercise of sound discretion required that there be provision for adequate protection of the rights of the defendant, such as allowing a continuance to allow time for preparation to meet the issues. Such argument is without merit as there was no request for a continuance by defendant, and for the further reason, as we have mentioned, that it was the defendant who injected the matter of the parking lot incline[5] into the case.

■ In its persistent attack on plaintiff's verdict directing instruction, defendant asserts that the plaintiff's testimony contains the admission that the location of her fall was on the large incline, far removed from the location of the hole. The plaintiff did testify that where she fell was but "a few steps" from the entrance door to defendant's store, which defendant argues would have placed her on the large incline and nowhere near the hole. But plaintiff was steadfast in her testimony that she fell in a hole on an incline. (We have already stressed in fulsome detail the fact that there were two inclines). As stated in *Jockel v. Robinson,* 484 S.W.2d 227, 231 (Mo.1972):

> "[I]f a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. In the absence of such an explanation, the party may not have the benefit of any testimony which is contrary to his own testimony, . . . Where, however, the testimony of a party is not a positive statement of fact within his own knowledge, but is a *mere estimate or opinion, it does*

---

**4.** As plaintiff insists and as previously mentioned, reference was to the hole in the smaller of the two inclines on the parking lot.

**5.** While defendant sought only to encompass the large incline without a hole, defendant's cross-examination of plaintiff brought out two inclines, one with a hole. And it is the smaller incline with the hole that plaintiff, on cross-examination, testified was the villain causing her injury.

*not have the effect of a judicial admission.*" [Emphasis added].

Plaintiff's testimony as to the precise distance she was from the defendant's store when she fell was merely an estimate, and the transcript as a whole readily establishes that plaintiff had great difficulty in estimating distances. It is undoubtedly for just such reason that the rule has evolved that a party is not conclusively bound by estimates of time, speed or distance. *Vaeth v. Gegg,* 486 S.W.2d 625 (Mo.1972).

Defendant's employee witnesses testified that plaintiff was found on the large incline where no hole existed, but plaintiff's granddaughter testified that plaintiff was found on the small incline near the hole. And, of course, plaintiff testified she was near the hole, which was on the small incline. Therefore, there was a conflict of evidence between plaintiff's and defendant's witnesses which was resolved by the jury in plaintiff's favor. And we leave it to the jury to weigh the evidence and judge the credibility of the witnesses. *Wilkins v. Cash Register Service Company,* 518 S.W.2d 736 (Mo.App.1975); *Haas Baking Company v. Luzio,* 512 S.W.2d 428 (Mo.App.1974).

Defendant also argues that even if plaintiff fell in the hole, the submission of the hole in plaintiff's verdict director as causing the parking lot to not be reasonably safe was improper for the reason that the hole was an open and obvious condition; that plaintiff was thereby charged with constructive knowledge of the hole. The duty of the owner or possessor of land (in this case, defendant) to an invitee (plaintiff) is based on his superior knowledge of the defective condition of the premises which results in injury. *Hokanson v. Joplin Rendering Company, Inc.,* 509 S.W.2d 107 (Mo.1974); *O'Dell v. Cook's Market, Inc.,* 432 S.W.2d 382 (Mo.App.1968). So the rule, as reflected by paragraph third of MAI 22.03, is that an invitee may not recover when the dangerous condition is so open and obvious that it is known, or, in the exercise of ordinary care, should have been known by the invitee. *Hokanson v. Joplin Rendering Co.,* supra; *Dixon v. General Grocery Company,* 293 S.W.2d 415 (Mo. 1956); *Ecker v. Big Bend Bank,* 407 S.W.2d 45 (Mo.App.1966).

In this case, plaintiff testified that she fell in the hole as she was stepping backwards to move out of the way of the opening car door. She had initially emerged from the car on the other side, so this was the first time she had had the opportunity to be near the hole. See *Burch v. Moore's Super Market, Inc.,* 397 S.W.2d 590 (Mo.1965). She had been to the parking lot previously, yet she testified that she did not know that the hole was there and had not seen it until after her fall. Defendant had the duty to provide a reasonably safe means of ingress and egress. *Demko v. H&H Investment Company,* 527 S.W.2d 382 (Mo.App. banc 1975); *Hulahan v. Sheehan,* 522 S.W.2d 134 (Mo.App.1975), and plaintiff had the duty to walk with the same degree of care as an ordinarily prudent person. *Cunningham v. Bellerive Hotel, Inc.,* 490 S.W.2d 104 (Mo.1973); *Murphy v. S.S. Kresge Co.,* 239 S.W.2d 573 (Mo.App.1951). But plaintiff was not required to be unusually alert, *Holmes v. Egy,* 202 S.W.2d 87 (Mo.App.1947), or to peer down, *Cunningham v. Bellerive Hotel, Inc.,* supra, or to walk with her eyes down and "glued" to the pavement, *Wyatt v. Southwestern Bell Telephone Company,* 514 S.W.2d 366 (Mo. App.1974), for there was nothing here to draw her attention to the danger of the hole, *Murphy v. S.S. Kresge, Co.,* supra, or give her reason to anticipate the danger, *Burch v. Moore's Super Market, Inc.,* supra. We cannot find from the evidence here that the hole was so obvious that as a matter of law plaintiff should have been aware of its presence. Under the circumstances of this case, the question whether plaintiff should have been aware of the defect in the exercise of due care was a jury question. *Burch v. Moore's Super Market, Inc.,* supra; *Summa v. Morgan Real Estate Co.,* 350 Mo. 205, 165 S.W.2d 390 (1942); *Wyatt v. Southwestern Bell Telephone Company,* supra; *Willis v. Rivermines I.G.A. Supermarket,* 350 S.W.2d 437 (Mo.App.1961). The jury found

for plaintiff, and we do not perceive a basis for interfering with that finding.

Defendant's final assault on the verdict-directing instruction relates to paragraph fourth: "defendant failed to use ordinary care to repair it [the defective condition on the parking lot]." It is here asserted that this part of the instruction imposed a greater duty on defendant than that which is imposed by law, i. e. the alternative duty to make reasonably safe *or* warn. However, defendant has also failed to preserve this point for appeal, as there is no mention of this issue in defendant's motion for new trial.[6] We therefore do not consider it. *Pasley v. Newton,* supra.[7]

Defendant's next allegation of error concerns the admission into evidence of the amount of plaintiff's hospital bill and overruling defendant's motion to strike such evidence. It is alleged that the claim for these specific damages was not pleaded and that the information was not provided in the answers to interrogatories. Plaintiff's petition alleged that "plaintiff will in the future become obligated for bills for necessary medical care and treatment and medi-

cine." In interrogatories, plaintiff was asked about her hospitalization and the amount of her bills. The answers were that she was hospitalized May 2–25, that her physician's bill was $540 and that she did not have the bill for the hospital. There was no supplementation of these answers. At trial, plaintiff was allowed to testify, without objection, that she was in the hospital from May 2 through May 28, 1973. At this point, nothing was said with regard to expenses, but during the trial plaintiff's hospital records were marked for identification, and defendant's counsel stated that he had no objection to the use of a copy of the records as an exhibit.[8] The records were thereupon accepted into evidence under the Business Records Act.[9] Subsequently, plaintiff's counsel read to the jury the amount of the hospital bill ($2,527) from the copy of the hospital records, and defendant's counsel objected that the medical bill was far in excess of what had been pleaded or had been set forth in the answers to interrogatories and thereby claimed surprise.

It is true that medical and surgical costs must be specially pleaded.

---

6. Defendant's motion for new trial on this point provides:

"If there was insufficient evidence upon which to base a finding that defendant had a duty to repair, alter or reconstruct the parking lot as submitted in paragraph 'Fourth' or that defendant was injured by reason of defendant's failure to do so as submitted in Article (sic) 'Fifth.' "

Defendant's brief on this point also only speaks of the repair and warning regarding the incline (large incline?) and makes no reference of the hole.

7. We do not accept plaintiff's interpretation that the form of this model instruction allows a plaintiff to always choose to submit one particular specification of defendant's duty. The duty still remains an alternative duty to make reasonably safe or warn and most cases should be submitted in the disjunctive. See e. g. *Weisman v. Herschend Enterprises, Inc.,* 509 S.W.2d 32, 33 (Mo.1974); *Demko v. H&H Investment Company,* supra at p. 386. The Missouri cases have consistently followed the Restatement as to the duty owed an invitee. The Restatement (First) of Torts § 343 (1938) expressly stated that the duty was to make the condition reasonably safe, or to give an adequate warning. See *Harbourn v. Katz Drug Company,* 318

S.W.2d 226 (Mo.1958); *McClure v. Koch,* 433 S.W.2d 589 (Mo.App.1968); *O'Dell v. Cook's Market, Inc.,* supra. The Restatement (Second) of Torts § 343 (1965) is less explicit as to the duty owed and simply provides that the owner or possessor must "exercise reasonable care to protect [invitees] against the danger." Yet, we believe that it is clear that the alternative duty to make reasonably safe *or* warn of an unknown danger persists under the second Restatement and the Missouri case law based thereon. See *Gilpin v. Gerbes Supermarket, Inc.,* 446 S.W.2d 615, 619 (Mo. banc 1969); *Demko v. H&H Investment Company,* supra, at p. 385; *Plumlee v. Ramsay Dry Goods Company,* 451 S.W.2d 603, 606 (Mo.App.1970); Restatement (Second) of Torts § 343 Comments (b), (d).

8. Defendant argues that it had waived objection only to the use of a copy of the records. However, the exhibit was accepted into evidence "under the Business Records Act." We believe that, at this point, the records were admitted generally, and not for any limited purpose.

9. §§ 490.660–490.690 RSMo 1969.

*Moore v. Parks,* 458 S.W.2d 344 (Mo.1970). But plaintiff's petition said that she *will in the future* become obligated when she had already received medical care and been hospitalized. Although perhaps she had already incurred debt, we agree with the trial judge that the pleadings were broad enough to cover the hospital bills she had not yet received. In any event, evidence was introduced at trial pertaining to such hospital expenses and therefore the pleadings must be considered as having been amended to conform to this evidence. Section 509.500; *Gooch v. Avsco, Incorporated,* 340 S.W.2d 665 (Mo.1960). Plaintiff had testified as to her hospitalization and, more importantly, the hospital records containing the bill had already been received into evidence. When objectionable documentary evidence is admitted without objection, its contents may be properly considered as evidence of the facts therein set forth. *Denton Const. Co. v. Missouri State Highway Com'n,* 454 S.W.2d 44 (Mo.1970). Where written exhibits are introduced, their entire contents are in evidence. *Ellis v. Farmer,* 287 S.W.2d 840 (Mo.1956); *Landman v. John Hancock Mut. Life Ins. Co.,* 211 S.W.2d 530 (Mo.App. 1948); *Sikes v. Riga,* 221 Mo.App. 152, 297 S.W. 727 (1927). This is not, therefore, an instance where the trial court granted its discretionary leave to amend pleadings in such a way as to enhance damages, see *Moore v. Parks,* supra, so it was not necessary to take precautions to protect the rights of the party adversely affected.

 Since the objection to the evidence was not adequately preserved, defendant's argument concerning the failure to supply supplemental answers to interrogatories also fails. Yet, we wish to comment on the merits of defendant's contention that the evidence of the hospital bill was inadmissible because of failure to supply the amount in supplemental answers. The rule is that when an answer of a material and substantial nature becomes incorrect because of subsequent information obtained, the party has an obligation to correct it by supplementation. However, "[n]ecessarily, a trial court first will determine whether in the particular situation the opposing party

has been prejudiced. The court might find in some instances, . . . that no prejudice resulted." *Laws v. City of Wellston,* 435 S.W.2d 370, 375 (Mo.1968). In the instant case, the trial court reasonably concluded that defendant could not claim surprise or prejudice, since it was fully apprised of plaintiff's hospitalization.

 The final issue which we consider relates to the testimony of plaintiff's expert witness, who, after studying pictures of the hole in defendant's parking lot, testified that depending on weather conditions it would take from 10 to 14 months for the hole to develop. Defendant objected that the testimony was too speculative and that the witness was not qualified to testify. The trial court is vested with wide discretion in deciding an expert witness' qualifications. *State ex rel. State Hwy. Com'n v. Reynolds,* 530 S.W.2d 34 (Mo.App.1975). Plaintiff's expert witness had substantial practical and specialized experience in the supervision and maintenance of asphalt parking lots, which provides a proper source of expertise. *Russell v. Mid-Western Homes & Truss, Inc.,* 514 S.W.2d 651 (Mo. App.1974). We find no abuse of discretion in permitting plaintiff's expert witness to testify. Further, the fact that the witness rendered his opinion based on photographs, which were clear and distinct, does not attenuate or vitiate the witness' opinion. *Chambers v. Kansas City,* 446 S.W.2d 833 (Mo.1969).

 Defendant also contends that hypothetical questions asked of the witness regarding the development time for the hole did not hypothesize sufficient facts. It is, of course, not necessary to state every fact of record in a hypothetical question, *Golden v. National Utilities Co.,* 356 Mo. 84, 201 S.W.2d 292 (1947), and we consider only those omissions to the hypothetical to which specific objection has been made. *De Moulin v. Kissir,* 446 S.W.2d 162 (Mo.App.1969). The specific omissions in the question to which objection was raised were the factors of traffic and weather. The expert witness testified, on cross-examination, that traffic

was not a significant factor for his opinion, and his answer specifically allowed for deviation in weather conditions.[10] Giving effect to the maxim that the trial court has broad discretion in the matter of hypothetical questioning of an expert witness and that the omission of some facts is allowable, we find no abuse of discretion in the hypothetical posed to plaintiff's expert witness. *Schmitt v. Pierce*, 344 S.W.2d 120 (Mo. banc 1961).

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.

---

10. "Depending on what your weather conditions had been and how severe a winter you have had, from ten to fourteen months to go from just a small crack to a hole this size."